UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CLINTON WAYNE MORGAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> IAN WALLACE, et al., ) <br> ) <br> Defendants. ) | Case No. 1:13CV13 SNLJ |

## MEMORANDUM AND ORDER

Pending before the Court is plaintiff's motion for preliminary injunction (#16), which was filed May 29, 2013. The Court ordered defendants to respond and ultimately appointed counsel for the plaintiff, who is incarcerated with the Missouri Department of Corrections. The Court ordered plaintiff and his new counsel to file an amended complaint and/or motion for preliminary injunction within 60 days (#29). Plaintiff filed an amended complaint on August 29, 2013 (#31), but the plaintiff has not filed a reply memorandum in support of his motion, nor has a new motion been filed.

The Court denied the defendants' motion to dismiss on June 6, 2013. In that Memorandum and Order (#19), the Court summarized plaintiff's claims as follows:

> Plaintiff filed this action in January of 2013, pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during his incarceration at Southeastern Correctional Center ("SECC"). In his complaint, plaintiff makes allegations against defendants Ian Wallace, Warden of SECC, and Cheryl Thompson, Functional Unit Manager. Plaintiff states that he received a conduct violation on October 30, 2011 during his incarceration at Crossroads Correctional Center ("CRCC") for "conspiracy to introduce an illegal substance" into the prison population.[1] He states that his conduct violation was in violation of Institutional

---

[1] Plaintiff was later moved to SECC.

Rule #11.2, for which he was originally told he would be placed in administrative segregation for a minimum of twenty (20) days.  Plaintiff asserts that each time his case was reviewed by the Administrative Segregation Review Committee, they continued his confinement in the Segregation Unit, telling him it was "due to the serious nature of the violation." [2] He claims that on several occasions his case was reviewed directly by defendant Thompson, the Chair of the Committee, who continued to increase his time in administrative segregation, telling him that "they are taking these #11.2s more seriously now and that is the reason for the [psychological assessment request]." In fact, defendant Thompson told him that he is being held there "indefinitely" until a psychological assessment can be arranged for him, although plaintiff has not been given a reason for a psychological assessment. Generally, plaintiff complains that his reviews are nothing more than a rubber-stamping of his continued confinement and that he has been given different and changing reasons for his continued confinement in order to keep him in administrative segregation.

Plaintiff claims that he appealed his extended time in administrative segregation directly to defendant Wallace. He states that he complained that the Institutional Rules "see" an #11.2 as a "minor" violation, and he should not still be housed in administrative segregation more than one-year later. Plaintiff has attached to his complaint defendant Wallace's September 21, 2012, response to his grievance.  Regarding the length of time spent in administrative segregation, Wallace states, "As stated in your IRR response, you were assigned to administrative segregation due to the nature of conduct violation Rule #11.2 on 10/20/11. Trying to introduce illegal substances into an institutional setting is a threat to the safety and security of the institution. Once the administrative segregation committee and Warden deem necessary, you will be released to general population."

Plaintiff takes issue with the length of time defendant Wallace took to respond to his grievance. However, the majority of his complaint concerns his belief that the extended time he has been kept in administrative segregation is a violation of his due process rights.

Plaintiff asks the Court for uniform guidance for the Missouri Department of Corrections, setting forth the number of days that an inmate can be kept in administrative segregation for a violation of each specific rule. Plaintiff additionally seeks an order directing defendants to release him from administrative segregation.  Last, plaintiff seeks an order from this Court directing defendants to follow their own grievance procedures.

---

[2]Plaintiff states that his case has been reviewed on several different occasions, or at least nine (9) different times since he was transferred back from Crossroads Correctional Center. He claims that these reviews have been pro forma, or rubberstamps — done simply to keep him confined in administrative segregation.

2

(#19 at 1-3 ).

Plaintiff moves for a preliminary injunction and requests that the Court enjoin defendants and others from confining plaintiff to administrative segregation.[3]  To determine whether preliminary injunctive relief is warranted, the Court must balance threat of irreparable harm to the movant, the potential harm to nonmoving party should injunction issue, the likelihood of success on merits, and the public interest.  *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (*en banc*).

To prevail on a claim like plaintiff's here, "based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011) cert. denied, 133 S. Ct. 243 (U.S. 2012) (quoting *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir.2002) (alteration omitted) (quoting *Sandin v Conner*, 515 U.S. 472, 484 (1995)).

The Court has already held that, although plaintiff's confinement has been routinely "reviewed," his allegations are sufficient to implicate a liberty interest at this juncture based on the sheer length of time he has spent in Administrative Segregation and the allegations he makes regarding the "rubberstamping" type of "review" he has received.  (See #19 at 7.)  "Having determined that a liberty interest does in fact exist in this case, we must next determine what process is necessary to protect that interest." *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011) *cert. denied*, 133 S. Ct. 243 (2012) (quoting *Clark v. Brewer*, 776 F.2d 226, 232 (8th Cir.

---

[3]Plaintiff actually requests that the Court enter an order requiring the defendants to "show cause why a preliminary injunction should not issue" that would enjoin them from confining plaintiff to administrative segregation.  The Court did order the defendants to respond to plaintiff's motion (#19).

1985)). Such an inquiry involves consideration of whether the plaintiff "actually received meaningful reviews" of his confinement status. *Williams*, 662 F.3d at 999. "Sham reviews" will not suffice. *Id.*

Defendants' memorandum in response to the plaintiff's motion for preliminary injunction focuses entirely on the conditions of Administrative Segregation and whether they constitute an atytpical and significant hardship. The defendants address recreation time, phone calls, and access to the courts, but defendants fail to address the matter of plaintiff's legal right to a meaningful, periodic review. On the other hand, no party has provided the Court with the documentation necessary to show the reviews provided to the plaintiff were meaningful. The Court cannot hold that the *Dataphase* factors have been met under the current record. The parties appear to be in active discovery at the present time, however, and dispositive motions are due in less than eight weeks. The Court will deny plaintiff's motion without prejudice at this time.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (#16) is DENIED without prejudice.

Dated this   8th   day of November, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE