UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CLINTON WAYNE MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:13CV13 SNLJ |
| ) | |
| IAN WALLACE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff is currently a prisoner at Southeast Correctional Center ("SECC"). He filed this 42 U.S.C. § 1983 action against defendants Ian Wallace (the warden of SECC) and Cheryl Thompson (function unit manager of SECC's administrative segregation) alleging that his Constitutional right to due process was violated when he was placed in administrative segregation for an extended period of time. Defendants have moved for summary judgment (#41). The matter is fully briefed and is ready for disposition.

I.  Background

The following facts are undisputed except where indicated. On February 28, 2012, while incarcerated at Crossroads Correctional Center ("CRCC"), plaintiff was issued a conduct violation for conspiring with his mother to smuggle narcotics into the institution. This was in violation of Missouri Department of Corrections ("MDOC") Rule 11.2. Rule 11.2 is considered a Level 1 violation, the highest in the MDOC grading of violations. As a consequence of that Rule 11.2 violation, plaintiff was assigned to CRCC's administrative segregation. Assignment to MDOC administrative segregation is

based on safety and security needs of the institution, and the risk each offender represents to the institution, staff, and other offenders.

On May 15, 2012, plaintiff was transferred from CRCC to SECC. Upon his arrival at SECC, plaintiff was assigned to SECC's administrative segregation. Thereafter, plaintiff received periodic "classification hearings" regarding his continued assignment to administrative segregation. At those hearings, plaintiff was provided an opportunity to make a statement and read a summary of the committee's findings. He also received copies of the hearing forms, which stated the supposed reasons for the assignment to administrative segregation and well as the committee's "recommendation" for the future. Classification hearings took place while plaintiff was in administrative segregation on June 14, July 12, October 3, November 29, and December 18 in 2012, and on January 15, February 7, and March 7 in 2013. During that time, plaintiff received conduct violations for disobeying orders (June 8, September 3, and December 1, 2012) and for having an unauthorized article or substance (May 27 and July 17, 2012).

At the November 29 and December 18 hearings, for which defendant Thompson was the chairperson, plaintiff was advised that he would continue to be assigned to administrative segregation "due to the nature of [Rule] 11.2 [violation]." The December 18 hearing form also indicated that the prison officials would "submit [a request for a] 12 month extension" of his administrative segregation assignment.

The institution made that request for a 12-month extension on December 21, 2012. But on January 8, 2013, the deputy division director approved an extension of only 90

2

days, noting that "violation information in extension request is inconsistent with CDV log which does not reflect [Rule] 11.2 [violation]. No major or aggressive violations in last year."

Then, at a March 7, 2013 hearing, for which defendant Thompson was again the chairperson, plaintiff was advised he would be released into the general population. He was so released on March 8, which was within the 90-day extension window. But on March 11, 2013, Morgan was again assigned to SECC administrative segregation pending the outcome of an "investigation."

Plaintiff received a classification hearing on March 14, 2013 regarding his re-assignment to SECC administrative segregation. Defendant Thompson was the chairperson. The hearing form states that the reason for the hearing was "initial adseg hearing /s/ was placed on TASC pending an investigation." The recommendation was "assign adseg pending completion of investigation."

On March 20, 2013, plaintiff was issued a conduct violation that shed little light on the nature of the "investigation" for which plaintiff was confined to administrative segregation. That conduct violation was for violations of Rule 11.2, conspiracy to introduce narcotics into a MDOC facility, and Rule 37.1, having an unauthorized relationship with an employee.

Notably, the March 20 conduct violation does not include the date, time, and location of the incident, which is required of conduct violation reports under MDOC's policy and procedure manual. The conduct violation states:

3

> On [December 21, 2012] Investigator Rardon concluded an investigation involving [plaintiff]. The investigation produced sufficient evidence to show [plaintiff] conspired with a staff member and others to introduce a narcotic into CRCC. [Plaintiff's] actions placed him in violation of rule 11.2 (Conspiracy) being involved in any way with an agreement, scheme, or plan to introduce a controlled substance or intoxicant into a departmental facility.
>
> These actions also place [plaintiff] inviolation of rule 37.1 Unauthorized relationships - having unnecessary personal interactions with an employee.
>
> This violation was delayed due to an investigation.

It thus appears that this second Rule 11.2 conduct violation was the result of a continued investigation into the 2011 conspiracy to smuggle narcotics into the prison population at CRCC. The date of the conclusion of that continued investigation was, according to the March 2012 conduct violation, December 21, 2012. The 2011 investigation (which resulted in the February 2012 conduct violation) had suggested that there was another member of the conspiracy, but his or her identity was then unknown. The 2012 investigation revealed that a MDOC corrections officer had been involved in the conspiracy to introduce narcotics into CRCC along with plaintiff and his mother. That information supported the finding that plaintiff had violated Rule 37.1. Plaintiff admits to having an unauthorized relationship with a CRCC correctional officer in violation of MDOC Rule 37.1.

The next classification hearing was April 11, 2013. Defendant Thompson was the chairperson. The reason for the hearing was "30 day adseg hearing /s/ was placed on TASC pending an investigation /s/ was assigned to adseg on 3/14/13." The "Offender

Statement" was "I don't know what the violation is about." The "recommendation" was "continue adseg due to nature of #11.2 after the completion of investigation."

Plaintiff had another classification hearing on July 2, 2013. Defendant Thompson was the chairperson. Plaintiff's statement was "I'd like to get out of the hole." The recommendation was "Continue adseg due to nature of #11.2."

Defendant Thompson states that she considered plaintiff's multiple conduct violations when determining his continued assignment to administrative segregation. Plaintiff was issued another conduct violation for failure to comply with an order on August 28, 2013, and another for possessing and transferring contraband on September 25, 2013.

Plaintiff complained to prison authorities, including defendant Wallace, regarding the fact that he did not have enough information about the nature of the conduct violation for which he was being held in administrative segregation. Defendant Thompson stated in her deposition that she did not know any more information than what was contained in the second conduct violation report. Plaintiff's efforts to complain using the prison grievance system were met with denials of his requests for more information.

Plaintiff filed his 42 U.S.C. § 1983 complaint on January 28, 2013. He alleges that he was confined in administrative segregation for more than a year on one conduct violation and that he did not receive meaningful hearings on his continuous reassignment. He claims that confinement occurred in violation of his Constitutional rights because he was denied due process in violation of the Fourteenth Amendment. The Court denied the

defendants' motion to dismiss and appointed counsel to represent plaintiff. Defendants have now moved for summary judgment.

## II. Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III. Discussion

Defendants contend that they are entitled to summary judgment because the evidence shows plaintiff received appropriate, meaningful reviews that resulted in his continued confinement in administrative segregation. Determining whether plaintiff's confinement to "adseg" was in violation of his due process rights involves a two-step inquiry: First, the Court determines whether a liberty interest was at stake. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). Second, the Court must determine what process is necessary to protect that interest. *Id.* (citing *Clark v. Brewer*, 776 F.2d 226, 232 (8th Cir. 1985)). This Court already determined in a prior order (#37) that plaintiff's year-long confinement in adseg implicates a liberty interest, so the Court moves on to the second step, whether the plaintiff "actually received meaningful reviews of his confinement status. Sham reviews will not do." (#37 at 4 (internal quotations omitted)(quoting and citing *Williams*, 662 F.3d at 999)).

It is undisputed that plaintiff received regular "reviews" of his confinement through the classification hearings detailed above. It appears that the basic procedures were followed at each hearing — plaintiff was afforded an opportunity to speak, the committee read its findings, a date for the next hearing was provided, and plaintiff received a copy of the hearing form that included written reference to his reassignment. Defendants maintain that the conduct violations that pepper the record in between classification hearings demonstrate that plaintiff displayed a "pattern of poor adjustment" which at least in part justified his continued confinement in adseg.

Plaintiff argues that although the prison personnel went through the motions of conducting regular reviews, the classification hearings did not constitute meaningful reviews. The Eighth Circuit has admonished that "administrative segregation is not punitive." *Kelly v. Brewer*, 525 F.2d 394, 399 (8th Cir. 1975). It "looks to the present and the future rather than to the past" and requires a judgment of "whether an inmate should be segregated from the general population and predicting what he will probably do or have done to him if he is permitted to ... return to population after a period of segregation." *Id.* at 399-400. On the other hand, a "sham review" gives undue weight to past conduct. *Williams*, 662 F.3d at 1008 (holding that requiring a prisoner to remain in adseg in light of past transgressions is "precisely the type of undue weight accorded to past facts that we explicitly forbade in *Kelly*[, 525 F.2d at 402]").

In *Williams*, a prisoner was held in adseg for fourteen years, and at each hearing held to review his confinement status, the committee merely checked off boxes indicating the prisoner posed a threat to the institution. 662 F.3d at 1003. The court there found that the defendant prison administrators had acted contrary to the admonition in *Kelly* about focusing on prior conduct, and, furthermore, that the reviews lacked the requisite meaningfulness because they failed to explain to the prisoner "with any reasonable specificity, why he constituted a continuing threat to the security and good order of the institution." *Id.* at 1008.

Plaintiff draws a strong comparison between *Williams* and his own situation. It is undisputed that plaintiff was originally put in administrative segregation upon discovery

8

of the conspiracy to smuggle narcotics into CRCC. Plaintiff remained in adseg for a year and was finally released just before the expiration of the 90-day deadline imposed by a deputy division director. The deputy division director even observed that a longer stay in adseg was not justified by the conduct violation record. Then, just days after his release into the general population, plaintiff was re-assigned to administrative segregation, and the reason given at the March 14, 2013 hearing was that he was "was placed on TASC pending an investigation." A few days later, plaintiff received the conduct violation dated March 20, 2013, which stated that on *December 21, 2012*, a prison investigator *completed an investigation* involving plaintiff, and the investigation showed plaintiff had conspired with a staff member and others to introduce a narcotic into CRCC. Thereafter, the classification hearings resulted in continued confinement to adseg, and the stated reason was that adseg was continued "pending completion of investigation" or "due to the nature of [the Rule] #11.2 [violation]." (#42-7 at pp. 11 and 12.)

Plaintiff contends that the documents and defendants' testimony supports that these were sham reviews and not, as defendants suggest, "meaningful." First, the Court observes that the "investigation" that was supposedly underway and that was the basis for the March 14 adseg assignment was (according to prison documents) *completed* on December 21, 2012. It is important to understand how that "2012 investigation" related to the investigation that resulted in the February 2012 Rule 11.2 conduct violation. The February 2012 conduct violation was the result of the 2011 investigation that showed plaintiff had been involved in a conspiracy with his mother (and others) to smuggle

9

narcotics into CRCC. The 2012 investigation revealed that the 2011 conspiracy to smuggle narcotics into CRCC included a long-time CRCC prison guard.

Plaintiff spent all of 2012 in adseg as a result of the 2011 conspiracy investigation. He was still in adseg when the 2012 investigation was apparently completed. Plaintiff did not receive a conduct violation for the information revealed by the 2012 investigation until March 20, 2013 — after he had been released from adseg (just before the 90-day deadline), and well after the investigation itself was complete. That conduct violation was for the conspiracy to smuggle narcotics into CRCC (Rule 11.2) *and* for violation of the rule against unnecessary personal interactions with a prison employee (Rule 37.1). The April 11, 2013 hearing form reflects that plaintiff did not know what violation had occurred. Indeed, the conduct violation suggests that he was being cited again for the 2011 conspiracy — for which he had already spent a year in administrative segregation and had been released— so plaintiff's confusion is understandable. To the extent the prison administrators believed he required additional time in adseg based on the information they had about improper personal interaction with a guard, that is not indicated on the forms. The hearing forms indicate he was in adseg beginning March 2013 due to the *Rule 11.2 violation*.

The timing of the investigation report, the timing of the conduct violation, and the wording of the hearing recommendations supports the plaintiff's theory that he was being punished for the past conduct — the 11.2 violation — for which he had been in adseg one year and released into the general prison population. To the extent the Rule 11.2

violation was the impetus for his assignment, plaintiff had already spent more than a year in adseg for the conspiracy, and sending him back to adseg for the same infraction suggests too close a focus on plaintiff's past acts (and may raise other concerns). *See Williams*, 662 F.3d at 1008.[1] Moreover, plaintiff's efforts to defend himself in the hearings were thwarted by the utter failure to provide him with information about the violation which was supposedly being investigated — indeed, the investigation appeared to be long over by March 20. The fact that the assignment to adseg was justified by the presence of a "pending....investigation" which was in fact over further supports plaintiff's argument that he did not receive due process.

Next, defendant Thompson — who chaired seven of plaintiff's fourteen hearings and who wrote that the adseg was to be continued based on the nature of the Rule 11.2 violation and pending the (apparently already completed) investigation — testified that she did not know when the Rule 11.2 violation (that resulted in the re-assignment to adseg) had occurred, and she also testified that she did not know any of the facts or circumstances surrounding the violation. Although defendants assert that such information is not a material fact to the Court's summary judgment analysis, the facts and circumstances surrounding the violation are important to the determination of whether plaintiff should have been continued in adseg, and both the plaintiff and defendant

---

[1] Although there is some disagreement regarding the force that past conduct may have in administrative segregation decisions, *see Williams*, 662 F.3d at 1012-13 (Loken, J., dissenting), it seems uncontroversial that, where a prisoner has spent a year in administrative segregation for an infraction and has been released, reassigning him to administrative segregation for the past act (in this case, a past Rule 11.2 violation) suggests due process was not provided.

11

Thompson needed to understand those matters as part of the review. As the Eighth Circuit has held, reviews lack the requisite meaningfulness where they failed to explain to the prisoner "with any reasonable specificity, why he constituted a continuing threat to the security and good order of the institution." *Id.* at 1008. Defendant Thompson also suggests that the other conduct violations on plaintiff's record during his time in adseg supported her recommendations, but, looking to the decision to re-assign plaintiff to administrative segregation in March 2013, plaintiff had no conduct violations between December 1, 2012 and March 20, 2013. Notably, the deputy division director said observed plaintiff had "No major or aggressive violations in last year" in denying the 12-month adseg extension on January 8, 2013. He received no conduct violations until March 20, 2013, and the hearing forms all indicate that it was the "pending investigation" and Rule 11.2 violation that sent him to and kept him in adseg.

A question of fact is therefor raised about the due process afforded to plaintiff both with respect to inadequate information given to the plaintiff regarding the conduct violation or investigation at the outset, and with respect to the reasons given for his continued assignment to adseg. Not only are officials "to provide a brief summary of the factual basis for the classification review and allow[] the inmate a rebuttal opportunity," but if the recommendation is special confinement, "the decisionmaker [must] provide a short statement of reasons. This requirement guards against arbitrary decisionmaking while also providing the inmate a basis for objection .... The statement also serves as a guide for future behavior." *Williams*, 662 F.3d at 1008 (quoting *Wilkinson v. Austin*, 545

U.S. 209, 225-26 (2005)). No such recommendation was provided for plaintiff here. There was no guide for future behavior and, indeed, it appeared that plaintiff was being held due to his long-past involvement in the drug smuggling conspiracy, which, again, flies in the face of the Eighth Circuit's pronouncement in *Williams*, 662 F.3d at 1008. Had defendant Thompson indicated with specificity the true reasons for plaintiff's continued confinement in adseg, then this Court may have been able to conclude that plaintiff received adequate due process. *See, e.g.*, *id.* at 1009. However, as in the *Williams* case, the record as it stands now "shows that the defendants failed to apprise [plaintiff] of the reasons that he continued to pose a threat to the security and good order of the prison," particularly in light of plaintiff's March 2013 release from adseg. *Id.*

Defendants do not seriously contend that defendant Thompson was not responsible for ensuring that plaintiff received due process as part of the classification hearings. However, defendant Wallace was not directly involved in the hearings themselves, thus his liability must arise from another aspect of plaintiff's claim. Plaintiff alleges that Wallace was responsible for responding to the grievances he filed with respect to his assignment to administrative segregation and the prison's failure to advise him as to the details surrounding the violation for which he was assigned to adseg. Defendant Wallace responded to plaintiff's grievances by stating that plaintiff was "properly issued the [second Rule 11.2] conduct violation....the violation was written in accordance with policy. You were afforded a disciplinary hearing in accordance with policy and found guilty." Wallace failed to address the core issue — whether the "investigation" that

13

resulted in the assignment to adseg was for the same incident for which plaintiff had spent a year in adseg. However, with respect to Wallace's role in the grievance process, there is no respondeat superior liability in 42 U.S.C. § 1983 claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In addition, "[i]n the context of a state prison system, an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). "If the state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim." *Id.*

However, there is evidence that Wallace was directly involved in the classification decision itself. Wallace states in his affidavit that he reviews the recommendation of the classification hearing committee and has the authority to approve or modify the committee's recommendations. Wallace stated in his affidavit that he reviewed plaintiff's file. There is at least a question of fact as to whether defendant Wallace deprived plaintiff of due process by allowing plaintiff to remain in administrative segregation based on the facts recited above.

Finally, both defendants argue they should be granted summary judgment because they are entitled to qualified immunity. Qualified immunity shields government officials from liability in a § 1983 action "unless the official has violated a "clearly established statutory or constitutional right of which a reasonable person would have known." *Carroll v. Pfeffer*, 262 F.3d 847, 849 (8th Cir. 2001). It is clearly established that "where

an inmate is held in segregation for a prolonged or indefinite period of time[,] due process requires that his situation be reviewed periodically in a meaningful way and by relevant standards to determine whether he should be retained in segregation or returned to population." *Kelly*, 525 F.2d at 400. The question of fact existing in this case is whether plaintiff here received a "meaningful" review of his confinement in light of the fact that plaintiff has set forth evidence that he was assigned to administrative segregation twice for the same offense. Defendants suggest that they followed prison policy and procedures, but the Institutional Services Policy and Procedure Manual requires that the committee review "all oral statements, submitted documentary evidence and facts surrounding the case and determine a recommendation." Institutional Services Policy and Procedure Manual § 21-1.2. Here, there is at least a question of fact as to whether the defendants could have reviewed all facts surrounding a case given their apparently confusion regarding the second Rule 11.2 "violation." Defendants are thus not entitled to qualified immunity on this record.

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' Motion for Summary Judgment (#41) is **DENIED**.

Dated this __18th__ day of July, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE